UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JADEN ANDREW REINIS,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:24-cv-2278-SCR<br><br>**ORDER** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1] For the reasons that follow, Plaintiff's motion for summary judgment will be DENIED, and the Commissioner's cross-motion for summary judgment will be GRANTED.

**I. PROCEDURAL BACKGROUND**

Plaintiff applied for SSI on August 6, 2021, alleging a disability onset date of July 1,

---

[1] SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); *Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

2007. Administrative Record ("AR") 18.[2] The application was disapproved initially on November 10, 2021, and on reconsideration on April 29, 2022. AR 18. On June 28, 2023, ALJ Bonnie Hannan presided over the hearing on Plaintiff's challenge to the disapprovals. AR 202-64 (transcript). Plaintiff appeared with Jessie Kaplan as counsel and testified at the hearing. AR 202, 225. Dr. William Biles testified as a medical expert, Laura Lykins as a Vocational Expert ("VE"), and Plaintiff's mother Laura Reinis as a third-party witness. AR 202-03, 209, 242, 249.

On September 27, 2023, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under the Act. AR 18-71 (decision), 72-75 (exhibit list). On July 1, 2024, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-4 (decision), 5-7 (exhibit list).

Plaintiff filed this action on August 21, 2024. ECF No. 1. The parties consented to the jurisdiction of a magistrate judge. ECF No. 8. The parties filed cross-motions for summary judgment, based upon the AR filed by the Commissioner. ECF Nos. 12 (Plaintiff's summary judgment motion), 15 (Commissioner's summary judgment motion). No reply brief was filed.

## II.  FACTUAL BACKGROUND

Plaintiff was born in 2004, and accordingly was an adolescent on the application date and a younger individual under the regulations as of the decision. AR 23; *see* 20 C.F.R § 416.963(c). As of August 2021, Plaintiff could communicate in English, was a twelfth-grader at South Sutter Charter School, and had never been employed. AR 423, 426-28. Asserted issues included ADHD, Optional Defiant Disorder ("ODD"), sensory problems, comprehension issues, multiple personalities, depression, isolation, suicidal ideation, anxiety, and panic attacks. AR 424.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

---

[2] The AR is filed at ECF No. 9 (AR 1 to AR 1281).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *see also Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quotation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

////

////

////

## IV. RELEVANT LAW

SSI is available for eligible individuals who are "disabled." 42 U.S.C. § 1381a. An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

*Id.*, § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

*Id.*, § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

*Id.*, § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Id.*, § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis,

the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

## V.  THE ALJ's DECISION

The ALJ made the following findings, with linguistic modifications for ease of reading:

> 1. The claimant was born on July 13, 2004 and was therefore an adolescent on August 6, 2021, the application date (e.g., 20 CFR 416.926a(g)(2)(v)). The claimant turned 18 on July 12, 2022 (20 CFR 416.120(c)(4)).
>
> 2. The claimant has not engaged in substantial gainful activity since August 6, 2021, the application date (20 CFR 416.924(b), 416.920(b) and 416.971 *et seq.*).
>
> 3. Since the application date, the claimant has had the following severe impairments: attention deficit hyperactivity disorder ("ADHD"); autism; oppositional defiant disorder ("ODD"); bipolar disorder; posttraumatic stress disorder ("PTSD"); major depressive disorder; and generalized anxiety disorder (20 CFR 416.924(c) and 416.920(c)).
>
> 4. Prior to turning 18, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).
>
> 5. Prior to turning 18, the claimant did not have an impairment or combination of impairments that functionally equaled the severity of the listings (20 CFR 416.924(d) and 416.926a).
>
> 6. Because the claimant did not have an impairment or combination of impairments that met, medically equaled any listing or functionally equaled the listings, the claimant was not disabled prior to turning 18 (20 CFR 416.924(a)).
>
> 7. The claimant has not developed any new impairment or impairments since turning 18.
>
> 8. Since turning 18, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 416.920(c)).
>
> 9. Since turning 18, the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 10. After careful consideration of the entire record, the undersigned finds that, since turning 18, the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited

to simple, routine, and repetitive tasks, but not at a production rate pace (e.g., no assembly line work); is limited to simple work-related decisions; is limited to tolerating few changes in a routine work setting, defined as performing the same duties at the same station or location day to day; can have occasional interaction with supervisors; can have occasional contact with co-workers with no tandem tasks or team-type activities; and can have no contact with the public.

11. The claimant has no past relevant work (20 CFR 416.965).

12. The claimant was born on July 13, 2004 and turned 18 on July 12, 2022. Now that he is 18, he is a younger individual age 18-49 (20 CFR 416.963).

13. The claimant has at least a high school education (20 CFR 416.964).

14. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

15. Since the date the claimant attained age 18, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

16. The undersigned finds that the claimant has not been disabled, as defined in the Social Security Act, since August 6, 2021, the date the application was filed (20 CFR 416.924(a) and 416.920(a)).

AR 23-71.

## VI.  ANALYSIS

Plaintiff makes two arguments in moving for summary judgment: (1) That the ALJ's functional equivalence analysis did not account for Plaintiff's extreme limitations in attending and completing tasks.  (2) That the ALJ's mental RFC determination improperly discounted the opinion of Plaintiff's treating psychiatrist. ECF No. 12 at 3.

**A. The ALJ Did Not Err in Finding Plaintiff's Condition as a Minor Did Not Functionally Equal an Appendix 1 Listing**

1. <u>Governing Principles, Functional Equivalence, and the Ability to Complete Tasks</u>

If an adolescent's impairment or combination of impairments at step three do not equal the severity of a condition listed in Appendix 1 to Subpart P of the regulations ("Appendix 1"), an ALJ will instead ask whether the limitations "functionally equal" the listings. 20 C.F.R. § 416.926a(a).  Specifically, the combination of impairments must result in an "extreme" limitation

in one of six domains of functioning, or "marked" limitations in two. *Id.* A "marked" limitation is one that "interferes seriously" with the claimant's ability "to independently initiate, sustain, or complete activities," equivalent to a standardized score that is at least two standard deviations below the mean for that domain. 20 C.F.R. § 416.926a(e)(2)(i). A limitation is "extreme" if it "very seriously" interferes, the equivalent of a standardized score at least three standard deviations below average, but not necessarily a total inability to function. 20 C.F.R. § 416.926a(e)(3)(i). Relevant factors for gauging limitations in each area include:

> (1) How well you can initiate and sustain activities, how much extra help you need, and the effects of structured or supportive settings (see § 416.924a(b)(5));
>
> (2) How you function in school (see § 416.924a(b)(7)); and
>
> (3) The effects of your medications or other treatment (see § 416.924a(b)(9)).

*Id.*

The domains of functioning include the ability to attend and complete tasks, which is the domain that Plaintiff challenges. ECF No. 12 at 9. The ability to attend and complete tasks gauges how well a claimant can focus and maintain attention, as well as begin, carry through, and finish activities. 20 C.F.R. §§ 416.926a(b)(1)(ii), (h). This includes the pace at which those activities are performed and the ease with which an individual changes between them. 20 C.F.R. §§ 416.926a(h). In other words, at issue is whether the claimant can "filter out distractions and [] remain focused on an activity or task" until it is finished at an appropriate pace, return to the task without prompting if they lose focus, and change their focus once that task is complete. 20 C.F.R. §§ 416.926a(h)(1)(i). Also at issue is whether before deciding to begin a task, they can predict the possible outcomes and estimate how much time is needed for it. *Id.* Examples of conduct that demonstrates limitations in this domain include being "easily startled, distracted, or overreactive to" irrelevant stimuli; either being slow to focus on activities of interest or failing to complete them altogether; repeatedly being sidetracked from their own activities or interrupting others completing tasks of their own; becoming easily frustrated and giving up on tasks even if the claimant is capable of completing them; and requiring extra supervision to remain engaged.

20 C.F.R. §§ 416.926a(h)(3).

### 2. Holding

The ALJ found no limitation in two domains of functioning and "less than a marked limitation" in the other four, including the ability to attend and complete tasks. AR 34. He first acknowledged that various pieces of evidence suggest a limitation in this domain. For example, a September 1, 2021 questionnaire completed by Gayle Hangen showed that Plaintiff completes tasks with "somebody keeping on top of him" and does not like unexpected changes. AR 47-48 (citing AR 1039). Another teacher questionnaire noted difficulty with attending and completing tasks, especially without mistakes and without distracting himself or others. AR 48 (citing AR 553). The teacher, whose name was illegible, reported that Plaintiff needed to be "snapped back on topic" if the conversation over an assignment went too far. AR 553.

However, the ALJ then noted several records that do not suggest severe limitations. An October 22, 2019 report by Maya Sindle from Southern Sutter Charter School, for example, asserted that Plaintiff was cooperative and amicable with the examiner, "demonstrated well-developed attention and concentration," focused on the test at hand, gave thoughtful answers without difficulty understanding the questions or expressing himself, and completed the various tasks. AR 48. Examinations and reports in 2021 and 2022 reflect similar performance in completing tasks, staying focused, engaging with the examiners, and finishing both classwork and daily activities independently. AR 48-49.

### 3. Plaintiff Does Not Meaningfully Explain How Information in the Record Undermines the ALJ's Finding of No Extreme Limitation

As a general rule, courts "review only issues which are argued specifically and distinctly in a party's opening brief." *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012) (quotations and citations omitted). This principle has two consequences in this action. First, Plaintiff only objects to the ALJ's assessment of his ability to attend and complete tasks. *See* ECF No. 12 at 11-14. He therefore waives any objection to the analysis of other domains of functioning, where the ALJ found less-than-marked limitations. AR 34. Because the limitation in a single domain must be extreme to justify a finding of disability, any error is harmless if it

8

only justifies finding a marked limitation. *See* 20 C.F.R. § 416.926a(a).

Second, Plaintiff fails to meaningfully explain how information in the record undermines the ALJ's finding that Plaintiff has a less-than marked limitation in the domain of attending to and completing tasks. Plaintiff discusses only the reports that the ALJ analyzed, initially citing the ALJ's summary of such reports without any further elaboration. ECF No. 12 at 12. Plaintiff then asserts that the ALJ "ignored many probative records and failed to draw a narrative bridge" between the evidence and the holding as to the domain of attending and completing tasks. *Id.* at 13. But Plaintiff does not specify what those other "probative records" are. Nor does he explain how precisely the ALJ's analysis of the records that were discussed was defective. Defendant argues that the failure to make any substantive arguments challenging the ALJ's reasoning or proffering other evidence effectively waives any objection to the ALJ's determination that this domain did not involve extreme limitation. ECF No. 15 at 7.

As one example of Plaintiff's failure to meaningfully develop arguments as to this domain, Plaintiff repeatedly cites several of Plaintiff's scores found in Ms. Sindle's October 22, 2019 report without explaining the scaling of those scores and what they should mean for the Court's evaluation of the ALJ's decision. ECF No. 12 at 7, 12. The Court nonetheless analyzes whether the ALJ erred by failing to find an extreme limitation based on any of those scores. ECF No. 12 at 12. Among other scores, Ms. Sindle's report documents Plaintiff's scaled Attention/Concentration subscore of 76 on the Wide Range Assessment of Memory and Learning (WRAML-2) and the Phonological Memory Subscore of 79 on the Comprehensive Test of Phonological Processing (CTOPP-2).[3] ECF No. 12 at 12; AR 541-42. Plaintiff's scores for "Inattention," "Hyperactivity/Impulsivity," and "Defiance/Aggression" on the Conner's Rating Scale all exceeded 80 and were therefore "Very Elevated." ECF No. 12 at 12; AR 543-44.

Significantly, Conners' ratings average at 50 with a standard deviation of 10. Any score above 80 would therefore be over three standard deviations above normal. *See* AR 543. The functional limitations regulations liken an extreme limitation to be equivalent to the "functioning

---

[3] Both tests end with "-2" because the test in question is the "Second Edition." AR 541-42.

we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." 20 C.F.R. § 416.926a(e)(3)(i).  However, no single test score, or any piece of information on its own, can establish a marked or extreme limitation.[4]  *See* 20 C.F.R. § 416.926a(e)(4)(i).  And Plaintiff's other scores do not indicate an extreme limitation.  The "Average" range for both WRAML-2 and CTOPP-2 is 85-115, with 69 as the maximum threshold for a "Lower Extreme" score.  AR 539, 541-42.  Scores of above 70 do not imply an extreme limitation, particularly when the 90% confidence interval for such a score is 68-87, which is partially within the Average Range.  AR 541-42.

Plaintiff has not shown that the ALJ erred by finding that he does not have an extreme limitation in the domain of attending and completing tasks.  He has therefore failed to show that the ALJ should have found him disabled at Step Three.

**B. The ALJ Did Not Improperly Discount the Opinion of Dr. Jehan Helmi**

1. Governing Principles

In evaluating medical opinion evidence, ALJs give no specific evidentiary weight to any particular type of opinion or source, but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness.  Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-(5).  Supportability and consistency are the most important factors, and therefore the ALJ is

---

[4] Moreover, Plaintiff's Conners' rating appears to have been based solely on reports furnished by Plaintiff's mother.  AR 543.  The ALJ noted information furnished by Plaintiff's mother in other reports suggested normal social interactions.  AR 25, 27, 29, 31.  This further suggests that the ALJ did not err by declining to find an extreme limitation based on the Conners' rating.

10

required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2).

Supportability and consistency are defined in the regulations as follows:

> Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). The Ninth Circuit has confirmed that the new regulatory framework eliminates the "treating physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. *Id.* In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

    2. <u>Opinion and Holding</u>

On May 24, 2022, psychiatrist Dr. Helmi opined that Plaintiff exhibited severe impairments in multiple settings that affect "social, inter/interpersonal, educational, and vocational functioning." AR 77, 1212. Specifically, Plaintiff had an unspecified degree of limitation in intellectual and cognitive abilities, as well as in comprehending and memorizing information, and significant limitations in daily living activities and in maintaining concentration, memory, persistence, or pace. AR 78, 1213. In a report released a few days prior, she also asserted that Plaintiff had extreme limitations in a variety of areas like understanding,

remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing himself. AR 1215.

Dr. Helmi opined that these impairments interfered with both Plaintiff's own safety and the safety of others as they relate to health, daily activities, social relationships, and living arrangements. AR 77, 1212. She did acknowledge that medication could improve his mood, agitation, and aggression when paired with "combination therapeutic modalities." AR 77-78, 1212-13. She nevertheless concluded that Plaintiff cannot resume any type of employment and would continue to decline in function over time. AR 1213.

The ALJ generally found Dr. Helmi's opinion unpersuasive. Examination notes throughout the spring of 2023 reflected a positive response to medication, good grooming and hygiene, a euthymic mood, no hallucinations or suicidal ideation, intact memory, good eye contact and attention, and intact judgment and insight. AR 64-65 (citing AR 1248, 1252, 1259). The ALJ found this inconsistent with Dr. Helmi's assertion of extreme limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace. AR 65. The ALJ also found Dr. Helmi's opinion inconsistent with Plaintiff's testimony, where he confirmed that he never had psychiatric hospitalizations, graduated from high schools with mostly As and Bs and without being held back, can read chapter books, spends a couple of hours per day playing video games, looks after his brother and his cats, and showers and dressed himself. AR 65. This activity was more consistent with a finding that Plaintiff retained functional abilities. AR 65. The ALJ concluded that her RFC's mental limitations still account for any "mood swings, anxiety, panic attacks, irritability, sensory issues, and cognitive issues" Plaintiff may have. AR 65.

3. The ALJ Sufficiently Credited Dr. Helmi's Opinion When Consistent with Other Sources

Plaintiff argues that the ALJ cherry-picked medical evidence that supported her determination, when the complete record suggests more serious limitations. ECF Nos. 12 at 16-17. He first cites the March 23, 2022 opinion of Dr. Morgen Aita, who found at least some limitation in every area of functioning except Plaintiff's ability to understand and perform simple

or repetitive instructions. *Id.* at 17; AR 1236. Dr. Aita found mild limitations in Plaintiff's ability to understand and perform more complex instructions, interact with others, and maintain concentration and persistence during a normal workday. AR 1236. She also found moderate limitations in his ability to adapt to the usual stresses of a normal workday or workweek, complete such a workday or workweek without interruptions due to his psychiatric conditions, and perform activities within a schedule and maintain regular attendance. AR 1236.

Dr. Aita clarified that a moderate limitation is "more than slight" but still allows the patient to "function satisfactorily." AR 1235. To what extent the ALJ needed to credit a mild or moderate limitation is therefore unclear. In any case, as Defendant notes, the RFC does reflect the limitations that Dr. Aita found mild or moderate. ECF No. 15 at 12. As to understanding and following instructions, Plaintiff was limited to simple, routine, and repetitive tasks and decisions, and even those could not be done at an "assembly line" pace. AR 59. As to whether he can adapt to workplace stress, Plaintiff was also limited to "tolerating few changes in a routine work setting, defined as performing the same duties at the same station or location day to day." AR 59. As to interaction with others, Plaintiff cannot interact with the public and can only have occasional interactions with supervisors and coworkers, which cannot include any team-based or tandem tasks. AR 59.

By incorporating these limitations into the RFC determination, the ALJ credited Dr. Helmi's findings to the extent that they were consistent with Dr. Aita's findings. To the extent that Dr. Helmi's opinion advocates for more severe limitations, Plaintiff cannot cite Dr. Aita's report as evidence that the ALJ misconstrued the record.

Plaintiff then cites some of the evidence the ALJ discussed when finding less than a marked limitation in attending and completing tasks, including Ms. Sindle's report, the test scores therein, Mr. Hangen's questionnaire, and the questionnaire with the illegible signature. *See supra* VI.A.2; ECF No. 12 at 18; AR 47-48. However, the ALJ's discussion of the record information in determining Plaintiff's RFC spans more than ten pages, involves detailed explanations of the import of that record information, and is sufficient to constitute substantial evidence. AR 59-70. The ALJ was not required to engage with the additional information from the Step Three analysis

cited by Plaintiff, particularly where it is not clear precisely how that additional information would impact the RFC. ECF No. 15 at 13; AR 59.

Additionally, as discussed with respect to Dr. Aita's report, the RFC does reflect the limitations suggested by these questionnaires and test scores. Limiting Plaintiff to simple tasks at a substandard pace addresses one teacher's concerns that Plaintiff struggles to follow single-step instructions. AR 59, 553. It also reflects both the memory-attention issues highlighted in Ms. Sindle's report and Dr. Hangen's assertion that Plaintiff needs supervision to complete activities, rather than timely completing them alone. AR 59, 539, 541-43, 1039.

None of the sources that Plaintiff cites suggest that the RFC should have credited Dr. Helmi's opinion more than it already does. The Court therefore need not discuss whether giving further weight to this opinion would have affected the RFC and invalidated the VE's testimony. *See* ECF No. 12 at 19-20.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is DENIED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is GRANTED;
3. The Commissioner's final decision in this matter is AFFIRMED; and
4. The Clerk of the Court shall enter judgment for Defendant and close this case.

DATED: September 23, 2025

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE